The next case for argument is 15-1552 Princeton Digital Image Corporation v. Hewlett-Packard Good morning. Good morning. May it please the court. I preliminarily note that there were originally two appellees in this case, Hewlett-Packard or HP, and Fujifilm. The appeal as to Fujifilm has been resolved by agreement of the parties, and so the appeal is only proceeding as to HP. There are some differences in the record as between Fujifilm and HP, and I think a lot of those things were addressed in the briefs. We obviously will focus only on the HP record. The initial issue before the court is the propriety of dismissing a case on summary judgment based on a highly factual defense that was not pled or even discussed or even substantiated until after discovery was over. In fact, the summary judgment in this case was based on the arguments by HP and a decision by the court that the HP printers, scanners, and cameras utilize or incorporate and utilize certain Microsoft technology, specifically the so-called catalog or .cat files and the so-called FAT32 file format. In fact, neither of those arguments regarding the .cat files or the FAT32 files was even raised by HP until after discovery was closed. What about the disclosure? What about the declaration that's at page A524? This is the declaration where it says that a partner at ELA Piper had a conversation. In other words, you learned of the licensed defense before the close of discovery, even if it wasn't formally pled. It's paragraph 15 on page A524. There are two things. One is back when the case was originally filed and HP originally answered, it pled a generic license defense. This is even before the Microsoft license was entered into or years before. They just pled a generic license defense and in further discovery they never expanded on it, so it just lay there. After the Microsoft license was entered into, for the next eight months HP did nothing. Because you're aware of that license, of course, since you're a party to it, right? Your client was aware of the license since it's a party to that license, right? Sure, of course. And doesn't that license expressly refer to this litigation? Yes, and it does. And that's actually an important point because the license says that any products that fall within the license will be withdrawn from the case. And that's what we did. PDIC, once it entered into the license, it disclosed the license to HP, withdrew all the products that it deemed to be within the scope of the license, and the case continued. And for the next eight months HP did nothing. Then 30 days before discovery was over, HP for the first time says, oh, but we're licensed because of Microsoft agreement. But it was before the close of discovery. 30 days before the close of discovery. But they did not explain it. In other words, the arguments that were ultimately made, that is that the license is based on this .cat files and FAT32, that was never raised until after discovery was closed. Where does this all take you in terms of this case? I mean, your arguments, maybe they did something, should have done something sooner. What does that all lead us to? It just goes to the Rule 56B declaration that was filed in the case in response to the summary judgment motion pointing out that PDIC never had any opportunity to take full and complete discovery of this licensed defense. A defense on which, of course, HP admittedly bears the burden of proof. Do you, this declaration in the context of the case law and what's required to be spelled out, you feel on several prongs, do you not, in terms of explaining explicitly how additional discovery would impact the core question of whether the accused products were incorporated, et cetera, et cetera. So the district court's declining to grant your 56D motion is based on the procedural defects of that motion. How did he err under an abuse of discretion in rejecting the motion? Well, I'm not sure why your Honor suggests that there was some defect in the 56D motion. In fact, it's a, or the 56D declaration, it's a 15-page declaration. It is off record, and it goes through in detail demonstrating why precisely there was no opportunity for discovery as to these FACT32 and DOTCAT files. The declaration points out that HP's declarants never cite a single document. And there is, the summary judgment has literally nothing, no documents associated with the declarations that support HP's conclusions. So there, you know, apparently those documents were never produced because they're not cited in the motion. But the main thing, that declaration, which is my declaration in fact, over 15 pages, I detailed why PDIC could not address these arguments about FACT32. We can't say the HP argued that this is Microsoft FACT32. Well, why is it Microsoft FACT32? That's a label that HP applied and the court accepted. But why is it a Microsoft? Did you get it from Microsoft? Apparently not, because there's no record of that. Is it based on some particular technology of Microsoft? We don't know. There's no record of that. All we have is a conclusory declaration that this is a Microsoft file format. How has that become a Microsoft technology that's incorporated in the accused devices? As to the catalog or .cat files, again, the declaration pointed out we have no evidence that these catalog files came from Microsoft. We never had discovery on it. But even if it came from Microsoft, what do these catalog files do? As far as we know, these .cat files sit on a CD. And then if the CD is put into a computer, not one of the accused printers, scanners, or cameras, but is put onto a computer, all those catalog files do is authenticate that these are legitimate files. It's a hash, nothing more. So how does that become Microsoft technology? It's an authentication. And that authentication never touches any of the accused products because it just sits on a CD. We pointed all of this out in the declaration, and we said we need some more discovery about how all of these things are supposedly Microsoft and where they're found. And that is what we were denied. Isn't your question really more going to the scope of the license rather than how the products operate? Is it required that they have to actually come from Microsoft? These kinds of questions. There are multiple issues. And because we had no discovery, it was hard to make arguments. But yes, we have issues as to the process, which is that this is dumped on us. We file a Rule 56D declaration, and the court ignores it. But then we have more substantive issues, and that is how the court construed and interpreted the agreement so that these undetermined, vague arguments about .cat files and FAT32 suddenly become technology. And that's incorporated or used with the accused product? That's correct, Your Honor. But at the end of the line, you still have to have a combination of an HP scanner or printer or camera with a Microsoft technology. But if the .cat file or whatever it is, if that is a Microsoft technology, then what does it matter whether it's just authenticating or not, given the broad language of the license? And that is exactly what we were denied discovery on. OK, we're into your rebuttal. Why don't we save that and hear from the other side? You're into your rebuttal time. Yes, thank you. Good morning. May it please the court. Your Honor referred to the language of Section 1.8 in the Microsoft agreement as enormously broad. I had in my outline, breathtakingly broad, so I'll take either word. The key question here is that all of the HP accused products qualify as Microsoft products under this enormously broad language, and no amount of additional discovery is going to change that fact. But how do we know that fact? I mean, you know, they're saying that they didn't have the ability to ascertain whether that fact is correct or not, and that's what discovery was necessary. And let me explain to you why they did. They had all of the accused products in their possession. They had all of the source code that runs on those accused products in their possession. They had documents that describe the use of the FAT32 file system in the accused products. They had depositions of witnesses who were designated as 30 v. 6 witnesses on the function, structure and operation of each of the accused products. They had those depositions after we served an interrogatory response that said, because all of HP's accused instrumentalities incorporate use or are used with Microsoft technology, software equipment, methods or services, they're licensed. And so they had an interrogatory response that told them, we believe every single one of the products you're accusing is subject to this license, and it was subject to the license. They took 10 depositions after that, including three of the folks who submitted declarations on this motion, and didn't ask a single question about Microsoft, about how this license might apply to the products that these witnesses were designated to testify about. No testimony was elicited during these depositions, and they all occurred after we had the conversation that Your Honor referred to where we said, we're asserting this defense. We issued the interrogatory response saying, we're asserting this defense against all of our accused products. And let's keep in mind that, as one of the panel members pointed out, PDIC had an affirmative obligation to go out and withdraw infringement contentions against HP that were subject to the license. Now, counsel says, we remove the products that we deem to be covered by the license. I think that's not enough. I think that the agreement required them to affirmatively go out, investigate, and figure out which one of these products were Microsoft compliant, and therefore subject to the license. And they didn't do that. They left that burden to us to get the license from them, figure out which of our products were subject to the license, provide them discovery and access to witnesses who could explain that, and then we filed our summary judgment motion. That's how the timeline goes. And if you read their briefs, you won't see a timeline, because the timeline doesn't work for them. Now, on the issue of the Microsoft cat files, I want to be clear that the undisputed evidence was that the Microsoft cat files are sent by Microsoft to Hewlett Packard once each product passes their what's called WICL testing. Funny acronym, but it's called WICL testing. And we provided evidence that for each accused product, Microsoft provided those cat files, and those cat files were shipped out with the product so that the products would work with Microsoft platforms. As to the FAT32 file system, the evidence was undisputed that the products, especially the printers, use it as their main file transfer system. And so we had declarations, sworn testimony, that all of the products used the FAT32 file system as their primary means to exchange information between the peripherals that were accused of infringement and Microsoft computers. And so the district court took all of this information and made the correct decision. Even in the pre-motion conference we had with his honor below, he looked at this language and said, this is incredibly broad. You, PDIC, need to explain to me when you oppose this summary judgment motion how it's possible that these products aren't covered by the license. And we still haven't heard. We still haven't heard why these products aren't covered. What we've heard is, we don't understand, we didn't get discovery, we had no access to it, this was dropped on us. This is an agreement that PDIC negotiated and signed and then sent to us as part of discovery. It was not our agreement, it's not an agreement we found from a third party and are asserting some license defense based on it. It was their agreement. Was there any statement by Microsoft interpreting the agreement? Not that I am aware of. The only, I believe there was an email attached to the declaration of Mr. Botts that's in the record where Microsoft expressed the view that they never wanted to hear from PDIC again either by way of a lawsuit or through an indemnity request from one of its customers. And I believe that's the only statement of any intention that there is in the record from Microsoft. Do you know the site for that in the record? I can get it, yes your honor. It is A677 and it's just a reference in the declaration of Mr. Botts who is also counsel for PDIC. So your honors, we believe the correct reading of this agreement is exactly as the district court found and that is that the agreement unquestionably covers Microsoft third parties of which HP is one. And in fact as you noted HP is called out in the agreement by name and the litigation is called out in the agreement by name. And the Microsoft product definition includes combinations, hybrids, aggregations of something, whatever it be and a Microsoft offering. Now that Microsoft offering language, I keep going back to it because it's software, technology, product, equipment, method or service. So it's anything that Microsoft uses, distributes, sells, imports, licenses, etc. The list goes on. So this definition could not be broader in my view. And so I haven't heard anything in this appeal either in the briefs or from counsel today that disputes that fundamental point. It's simply, well, if we were to go back and take further discovery, we might learn something. Well, that's precisely what Buolandi and the other cases we've cited don't permit a plaintiff, especially one with the kind of discovery that the plaintiff has had here, to do. And that is to speculate, to make conjecture about what might be obtained from further discovery. I can tell you that the three witnesses who submitted declarations in support of my summary judgment motion were each deposed. Three of the four were deposed. And each of their depositions lasted between an hour and an hour and a half. So these were not depositions where they were exploring the intricacies of how this license agreement the PDIC itself signed might apply to the products. They were never asked that question. And despite that, one of the witnesses did testify about this WICL testing, this Windows Hardware Quality Labs testing that each HP product has to go through to be certified as Microsoft compliant. No follow-up. So in my view, this is Buolandi. This is the accent packaging case where PDIC has been given more than an opportunity to discover the basis for what is now our license defense based on the Microsoft agreement, a license defense that was pled with the initial pleading. And they failed to discover the facts that we set forth in our summary judgment motion. But setting that aside, the fact is that there are no facts that they can uncover that are going to change the result here. And they've not identified any. And so ultimately, since we're in an abusive discretion standard on the discovery point, I would submit that we're nowhere close to Judge Sullivan having abused his discretion in granting summary judgment and denying the Rule 56D request. I have nothing further. Thank you. Thank you. I come back because apparently it's still not clear. Regarding FAT32, we say it's not a Microsoft technology. We say there's no evidence that it's a Microsoft technology. What about page A422 through 423, for example, that has this hardware white paper and it's titled Microsoft Extensible Firmware Initiative FAT32 File System Specification? That was submitted by Fuji, not by HP. HP's declarants never referred to it. It's part of the record, right? So it's something that shows that this is an offering by Microsoft. No, it's a record presented by Fuji. Fuji arguably said, hey, we feel that this is Microsoft technology because Fuji got its FAT32 from this white paper and we claim a license. But we don't have that from HP. All we have from HP is that they use FAT32. But there's nothing in HP's record that ties their FAT32 file formatting to Microsoft. And that is a huge difference. And this is Council that mentioned that white paper in his presentation. I think for that reason they can't rely on it. All Council has said is we use FAT32. Fine, you use FAT32, but how is it a Microsoft FAT32? No evidence. As to the .cat files, we say it's not in combination with the accused products. Because .cat files appear only on the CD and all they do is authenticate files on the CD when they are put onto a computer. That's all they do. The accused products never touch it, never see it, never rely on it, don't do anything. Your Honor has mentioned that this is a broad agreement. Council argues this is a broad agreement. Good, it's an extremely broad agreement. But you still have to have a Microsoft technology that is combined with the accused products. And in one case, there's no evidence that it's a Microsoft technology. In the other case, there's no evidence that even if it was a Microsoft technology, that it's combined with the accused products. Okay, your time has expired. Thank you, Your Honor. Thank you, Your Honor.